UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ERIC M. BRACK,**                                              Chapter 13
    Debtor                                                          Case No. 11-15662-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ERIC M. BRACK,**
    Plaintiff
v.                                                                         Adv. P. No. 11-1293
**LINCOLN FINANCE COMPANY LLC**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

Upon consideration of 1) the five-count Complaint against Lincoln Finance Company LLC ("Lincoln") filed by Eric M. Brack (the "Debtor") through which the Debtor seeks, *inter alia*, to rescind a purported "consumer credit" mortgage loan transaction pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 et seq, and its Massachusetts counterpart, as well as damages for violations of Mass. Gen. Laws ch. 93A; 2) Lincoln's Motion to Dismiss, its Memorandum in support of its Motion to Dismiss, and the affidavits

1

and exhibits filed support of the Motion to Dismiss, including a Business or Commercial Purpose Affidavit (the "Business Purpose Affidavit"),[1] which was executed by the Debtor and notarized by Attorney James Loscocco on March 2, 2010; 3) the Debtor's Opposition to the Motion to Dismiss, Memorandum, and affidavit; 4) Lincoln's Reply to the Debtor's Opposition; 5) the representations and arguments made at the hearing on January 18, 2012; 6) the Court's order of January 18, 2012 in which the Court determined to treat Lincoln's

---

[1] The Business Purpose Affidavit was captioned as follows: **"BUSINESS OR COMMERCIAL PURPOSE AFFIDAVIT."** It provided in pertinent part the following:

> Borrower(s) is (are) about to enter into a Credit Transaction (the "Credit Transaction") with Creditor involving a loan or line of credit in the amount of $465,000.00 under loan documentation to be executed contemporaneously with or within a short time after the execution of this Affidavit.
>
> In order to induce Creditor to enter into the Credit Transaction, Borrower(s) has (have) represented to Creditor that the purpose of the credit to be extended to Borrower(s) in such transaction is a BUSINESS OR COMMERCIAL PURPOSE and that no portion of the proceeds of the Credit Transaction will be used for personal or non-business purposes.
>
> Borrower(s) understand and acknowledges that because the Credit Transaction is entered into for a BUSINESS OR COMMERCIAL PURPOSE, Borrower(s) is (are) not entitled to and will not receive certain disclosures with respect to consumer Credit Transaction required under State and Federal Truth in Lending provisions for the benefit of consumers.
>
> Creditor has relied on Borrower's representation in agreeing to enter into the Credit Transaction and based upon such representations will consummate the transaction without making the above referred to consumer credit disclosures. . . .

(Emphasis in original).

Motion to Dismiss as a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(f), made applicable to this proceeding by Fed. R. Bankr. P. 7056 and afforded the parties an opportunity to conduct discovery and submit additional evidence and supplemental briefs in support of their positions; 7) the Supplemental Memorandum and affidavit filed by the Debtor; and 8) Lincoln's Reply to the Debtor's Supplemental Memorandum, the Court finds and rules as follows.

There are no material facts in dispute. The dispositive issue is whether the Debtor and Lincoln entered into a credit transaction primarily for a business or commercial purpose that would preclude any recovery under state and federal truth in lending laws or Mass. Gen. Laws ch. 93A, pursuant to which violations of those laws constitute unfair and deceptive acts. *See* note 2, *infra*.

The Debtor failed to submit any evidence that would permit a finding that he did not sign the Business Purpose Affidavit. He did not submit a scintilla of evidence to support his position that the mortgage loan transaction he seeks to rescind was a consumer loan transaction within the meaning of the state and federal truth in lending laws, *see e.g.*, 15 U.S.C. § 1603, 12 C.F.R. § 226.3(a)(1); Mass. Gen. Laws ch. 140D, § 1(a); and 209 CMR 32.00(1)(a).[2] Moreover, he failed to submit a scintilla of evidence that Lincoln engaged in

---

[2] The portent of the citations above is captured by section 1603(1) of the Truth in Lending Act, which provides:

This subchapter *does not apply* to the following:

(1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes,

3

any unfair or deceptive acts which would warrant relief under Mass. Gen. Laws ch. 93A.

The Debtor is 24 years old; he attends college full time, studying chemistry at Framingham State University. He submitted no evidence that he is impaired in any way. He did not contend that he neither could read nor understand the documents that he signed on March 2, 2010. Additionally, he did not assert that any of the loan documents were difficult to read or illegible. As set forth below, he elected not to read the documents he was signing and initialing.

On March 2, 2010, the Debtor and his father, Karl Brack, executed a term note in the principal amount of $465,000.000 secured by mortgages on three properties: 639 Aldrich Street, Uxbridge, Massachusetts, which the Bracks acquired in May of 2008 and owned jointly with a right of survivorship; 420 Concord Street, Holliston, Massachusetts, which the Debtor acquired individually in December of 2008; and 93 Lakeshore Drive, Holliston, Massachusetts, which the Debtor acquired individually in April of 2008. The Debtor and his father executed numerous documents in addition to the note, the mortgages and the Business Purpose Affidavit at the March 2, 2010 closing and initialed over 40 pages of documents. Attorney Loscocco notarized all pertinent documents. Attorney Loscocco had represented the Debtor with respect to the acquisition of the Concord Street property, but he did not represent the Debtor at the closing of the credit transaction with Lincoln.

---

>   or to government or governmental agencies or
>   instrumentalities, or to organizations.

15 U.S.C. § 1603(1) (emphasis supplied).

4

As a defense to the enforcement of the obligations under the note and mortgages, the Debtor asserted the following;

> I did not read the documents before I signed them and I did not ask questions about the documents. My father had told me that I needed to sign the documents in order to be repaid the money that he owed me and I believed him.

<center>***</center>

> When I signed the documents on March 2, 2010, I did not know that I was signing loan documents as a co-borrower or that I was granting mortgages on my primary residence or on the properties that I owned. I did not know that I was borrowing money from anyone; I thought that the purpose of the documents was that my father could repay me.
>
> I did not realize that the documents I had signed were loan documents until I was sued by Lincoln in Norfolk Superior Court in late 2010. Up until that time, I did not know that my father had received any money in connection with the papers that I had signed in March, 2010.

The Court finds that the Debtor is bound by the Business Purpose Affidavit in which he unequivocally represented to Lincoln that the loan transaction was for a business purpose. The caption of the affidavit was set forth in capitalized, bold letters and "BUSINESS OR COMMERCIAL PURPOSE" was reproduced three times. Although the Debtor disputed that he hand wrote "To finish construction and purchase new house to rehab" on the first page of the Business Purpose Affidavit, he did not dispute that he executed the affidavit and that his signature on the affidavit was properly notarized by Attorney Loscocco.

Massachusetts law is unequivocal and supports the position espoused by Lincoln. In <u>Wilton Properties, II v. 99 West, Inc.</u>, 2000 WL 33170832 (Mass. Super. 2000), the court

expressed the general rule as follows:

> The general rule is that, "in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not." *See* Spritz v. Lishner, 355 Mass. 162, 164 (1969), quoting Cohen v. Santoianni, 330 Mass. 187, 193 (1953). "It is, of course, true that ignorance through negligence does not relieve a party from his contractual obligations." *See* Cambridge Light Co. v. Dep't of Public Utilities, 333 Mass. 531, 536 (1956).

2011 WL 33170832 at *4.  The court added:

> It is equally well settled that, where a person capable of reading and understanding a written instrument fails to acquaint himself with its contents before affixing his signature thereto and such failure is due to his own negligence, his ignorance of the force and effect of the instrument is not available as a basis for equitable relief by way of cancellation.

Id. at *5 (citing O'Reilly's Case, 258 Mass. 205, 208-09, 154 N.E. 851 (1927)).

In Taunton Fed. Credit Union v. Weiner, 76 Mass. App. Ct. 1128, 925 N.E.2d 574 (Mass. App. Ct. 2010), *review denied*, 458 Mass. 1101 (2010), the court considered an action brought by the credit union to enforce a promissory note and foreclose on its security interest in a mobile home owned by the defendant.  The defendant alleged that her son, who had no legal interest in the home, committed fraud by misrepresenting the nature of the loan document, claiming that it would refinance the original mortgage to a more favorable interest rate.  Id.  The defendant asserted that her son's fraud made the loan documents unenforceable.  The court stated:

> Generally, Massachusetts courts have refused to hold a maker liable on a contract that was induced by fraud in the factum. Fraud in the factum can exist only where an act or misrepresentation of one party causes another to agree to the terms of the contract without an understanding that she has done so. Federico v. Brockton Credit Union, 39 Mass. App. Ct. 57, 63, 653

> N.E.2d 607 (1995). However, where there is a mere misrepresentation by one party as to the contents of a contract, the agreement is not void for fraud in the factum when the other party has an opportunity to read and understand the document before its execution. *See* ibid. A person of ordinary mind cannot say that she was misled into signing a paper that was different from what she intended to sign when she could have known the truth by merely looking when she signed. *See* ibid.
>
> A person who is able to read a document but fails to do so when the opportunity is afforded is not entitled to have the document set aside on the grounds that she was misled into signing a paper different from that which she intended to sign, at least in the absence of evidence that she was induced by the other party to sign such a document without reading it. *See* New Bedford Inst. for Sav. v. Gildroy, 36 Mass. App. Ct. 647, 657-658, 634 N.E.2d 920 (1994). *Compare* Collins v. Huculak, 57 Mass. App. Ct. 387, 392-394, 783 N.E.2d 834 (2003). *If a person can read, and is not prevented from reading what she signs, she alone is responsible for her omission to read what she signs.* New Bedford Inst. for Sav. v. Gildroy, *supra* at 658, 634 N.E.2d 920.

Weiner, 76 Mass. App. Ct. 1128 (emphasis supplied).  The court explained

> These long-settled principles apply in the present case. Weiner cites Gildroy for the proposition that if a party signs a document without knowledge, or reasonable opportunity to know, of its true nature or essential terms, there has been no effective assent to the contract, and it is entirely void. Id. at 657, 634 N.E.2d 920. The credit union did not dispute Weiner's account of her son's deceptive practices as set forth in her deposition and affidavit. However, the evidence does not establish the existence of any genuine factual dispute sufficient to defeat the credit union's motion for summary judgment. Under Gildroy, a fraud in the factum defense is not available. Id. at 658, 634 N.E.2d 920.

Weiner, 76 Mass. App. Ct. 1128.

The Debtor attempts to utilize his father's alleged concealment of the purpose of the loan to avoid the consequences of his free act of executing the Business Purpose Affidavit and other documents.  His assertions are unavailing.  The Debtor had an opportunity to review the documents and, had he done so, it would have been immediately apparent that

7

he was not executing documents that would enable his father to repay money that he owed him.  See Gildoy, 36 Mass. App. Ct. at 928.

Accordingly, the Court shall enter an order granting Lincoln summary judgment.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated:  April 9, 2012